UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KATHERINE ROCHA, | No. 2:15-CV-00003-JTR |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF Nos. 12, 20. Attorney Cory J. Brandt represents Katherine Rocha (Plaintiff); Special Assistant United States Attorney Alexis L. Toma represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 19. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

Plaintiff applied for Disability Insurance Benefits (DIB) on February 5, 2012, alleging disability since March 19, 2011. Tr. 12. The application was denied initially and upon reconsideration. Administrative Law Judge (ALJ) James

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

Sherry held a hearing on October 22, 2013, at which Plaintiff, represented by counsel, testified as did vocational expert (VE) Trevor Duncan. Tr. 34-69. The ALJ issued an unfavorable decision on December 2, 2013. Tr. 9-27. The Appeals Council denied review. Tr. 1-5. The ALJ's December 2013 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on January 5, 2015. ECF Nos. 1, 3.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 51 years old at the time of the hearing. Tr. 42. Plaintiff did not graduate from high school, but obtained a general equivalency diploma (GED). Tr. 43. Plaintiff previously worked in preschools and a daycare; Plaintiff also worked for a time as a school bus driver, a potato packager, and as an overnight stocker at Walmart. Tr. 43, 47-50, 63. Plaintiff last worked as an in-home caretaker part-time for six months, but had to stop working because she did not take a required test. Tr. 45-46.

Plaintiff testified that she was unable to work because of knee pain, anxiety, and depression. Tr. 51. Plaintiff testified that she gets anxious when she goes out in public and when she is around other people. Tr. 51. Plaintiff testified that her depression makes her feel like she's "stuck in a dark hole," makes it difficult for her to sleep or concentrate, and leaves her without energy, motivation, or appetite. Tr. 53-55. Plaintiff testified that she has feelings of worthlessness and she has lost interest in things she used to enjoy, including crocheting, cross-stitching, and reading. Tr. 55. Plaintiff rarely leaves the house by herself. Tr. 56. Plaintiff testified that, for about twenty days each month, her anxiety and depression are so bad that she cannot leave her house. Tr. 59. Plaintiff testified that depression

ORDER GRANTING DEFENDANT'S MOTION . . . - 2

1   drove her to make one suicide attempt.  Tr. 60.

2       Regarding her knee pain, Plaintiff testified that she had right knee

3   replacement surgery, and, after physical therapy, her knee "felt 100 percent better

4   than it did [prior to surgery]."  Tr. 57.  But Plaintiff's knee still hurts, swells, and

5   feels hot, and she has to elevate her leg a couple times a day.  Tr. 57.

6       Plaintiff testified that she can only stand for about fifteen minutes at a time.

7   Tr. 58.  After standing, Plaintiff testified that she needs to sit for ten or fifteen

8   minutes.  Tr. 58.  Plaintiff testified that she would only be able to stand for half an

9   hour in an eight-hour workday.  Tr. 58.  Plaintiff stated that it was easier for her to

10  walk than to stand in one place and she can walk for about half an hour or forty

11  five minutes.  Tr. 59-60.

## STANDARD OF REVIEW

13      The ALJ is responsible for determining credibility, resolving conflicts in

14  medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,

15  1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo,

16  deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d

17  1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is

18  not supported by substantial evidence or if it is based on legal error.  *Tackett v.*

19  *Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as

20  being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put

21  another way, substantial evidence is such relevant evidence as a reasonable mind

22  might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402

23  U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational

24  interpretation, the court may not substitute its judgment for that of the ALJ.

25  *Tackett*, 180 F.3d at 1097.  Nevertheless, a decision supported by substantial

26  evidence will still be set aside if the proper legal standards were not applied in

27  weighing the evidence and making the decision.  *Brawner v. Secretary of Health*

28  *and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence

1   supports the administrative findings, or if conflicting evidence supports a finding

2   of either disability or non-disability, the ALJ's determination is conclusive.

3   *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### SEQUENTIAL EVALUATION PROCESS

5   The Commissioner has established a five-step sequential evaluation process

6   for determining whether a person is disabled.  20 C.F.R. § 404.1520(a); *see Bowen*

7   *v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of

8   proof rests upon claimants to establish a prima facie case of entitlement to

9   disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once

10  claimants establish that physical or mental impairments prevent them from

11  engaging in their previous occupations.  20 C.F.R. § 404.1520(a)(4).  If claimants

12  cannot do their past relevant work, the ALJ proceeds to step five, and the burden

13  shifts to the Commissioner to show that (1) the claimants can make an adjustment

14  to other work, and (2) specific jobs exist in the national economy which claimants

15  can perform.  *Batson v. Comm'r of Soc.  Sec. Admin.*, 359 F.3d 1190, 1193-1194

16  (2004).  If claimants cannot make an adjustment to other work in the national

17  economy, a finding of "disabled" is made.  20 C.F.R. § 404.1520(a)(i-v).

### ADMINISTRATIVE DECISION

19  On December 2, 2013, the ALJ issued a decision finding Plaintiff was not

20  disabled as defined in the Social Security Act.  Preliminarily, the ALJ found

21  Plaintiff met the insured status requirements of the Social Security Act through

22  December 31, 2015.

23  At step one, the ALJ found Plaintiff had engaged in substantial gainful

24  activity from January 2012 to June 2012, but there was a continuous 12-month

25  period during which Plaintiff did not engage in substantial gainful activity.  Tr. 14.

26  At step two, the ALJ determined Plaintiff had the following severe

27  impairments:  severe osteoarthritis, right knee, status post total knee replacement in

28  March 2011; left knee osteoarthritis, mostly asymptomatic; obesity; major

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

1  depressive disorder; and, panic disorder with agoraphobia.  Tr. 14.

2        At step three, the ALJ found Plaintiff did not have an impairment or

3  combination of impairments that met or medically equaled the severity of one of

4  the listed impairments.  Tr. 15.

5        At step four, the ALJ assessed Plaintiff's residual function capacity (RFC)

6  and determined she could perform a range of light work except:

> [L]ift no more than 20 pounds at a time; frequently lift and carry 10
> pounds; sit, stand and walk 6 hours out of an 8-hour workday;
> unlimited push/pull within lifting restrictions; never climb ladders,
> ropes, and scaffolds and crouch; occasionally climb ramps or stairs,
> kneel, and crawl; frequently balance, and stoop; avoid concentrated
> exposure to extreme cold and excessive vibration; avoid moderate
> exposure to unprotected heights and use of moving machinery;
> capable of simple, routine and repetitive tasks, some well learned
> detailed tasks; can maintain attention and concentration for 2 hour
> segments for simple and well learned tasks without more than
> normally expected brief interruptions; is capable of superficial contact
> with the general public; can interact with coworkers on specific work
> related tasks.

17  Tr. 17.  The ALJ concluded that Plaintiff was not able to perform her past relevant

18  work.  Tr. 22.

19        At step five, the ALJ determined that, considering Plaintiff's age, education,

20  work experience and RFC, and based on the testimony of the vocational expert,

21  there were other jobs that exist in significant numbers in the national economy

22  Plaintiff could perform, including the jobs of production assembler, cashier II, and

23  fast food worker.  Tr. 24.  The ALJ thus concluded Plaintiff was not under a

24  disability within the meaning of the Social Security Act at any time from March

25  19, 2011, through the date of the ALJ's decision.  Tr. 24.

26                                **ISSUES**

27        The question presented is whether substantial evidence supports the ALJ's

28  decision denying benefits, and, if so, whether that decision is based on proper legal

1    standards.  Plaintiff contends the ALJ erred by (1) improperly rejecting the

2    opinions of Plaintiff's treating and examining medical providers; (2) improperly

3    rejecting Plaintiff's testimony about the severity of her symptoms; and, (3) failing

4    make adequate findings at step five.

**DISCUSSION**

5

**A.    Credibility**

6

7    Plaintiff contests the ALJ's adverse credibility determination.  ECF No. 12

8    at 12-17.

9    It is generally the province of the ALJ to make credibility determinations,

10   *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific

11   cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent

12   affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's

13   testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d

14   1273, 1281 (9th Cir. 1996).  "General findings are insufficient:  rather the ALJ

15   must identify what testimony is not credible and what evidence undermines the

16   claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

17   The ALJ found Plaintiff not fully credible concerning the intensity,

18   persistence, and limiting effects of her symptoms.  Tr. 21.  The ALJ reasoned that

19   Plaintiff was less than credible because her symptom reporting was inconsistent

20   with (1) objective medical evidence and the fact that her impairments could be

21   controlled with medication, (2) her history of conservative treatment, (3) her

22   normal presentation at medical appointments, (4) her lack of regular mental health

23   treatment, and (5) her activities of daily living.

24   **1.  Objective evidence and improvement with medication**

25   The ALJ noted that medical evidence did not demonstrate Plaintiff's

26   impairments caused total disability and that medications generally controlled her

27   mental impairments.  Tr. 21 (citing Tr. 368, 369, 370-71, 376).

28   Objective medical evidence is a "relevant factor in determining the severity

ORDER GRANTING DEFENDANT'S MOTION . . . - 6

of the claimant's pain and its disabling effects," but it cannot serve as the sole ground for rejecting a claimant's credibility. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Furthermore, the fact that a condition can be remedied by medication is a legitimate reason for discrediting an opinion. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ's reasoning that Plaintiff's alleged disability is unsupported by objective medical evidence and that her impairments have improved with medication are clear and convincing reasons to discredit Plaintiff. As noted by the ALJ, x-rays of Plaintiff's right knee showed that her knee was stable after surgery. Tr. 376. The ALJ also noted Dr. Wheaton's opinion that Plaintiff was capable of working with some restrictions that would last for less than a year. Tr. 21 (citing Tr. 326). And although Plaintiff historically had problems with her medication, in Plaintiff's most recent treatment notes, she reported that Effexor and Lorazepam effectively controlled her depression and anxiety. Tr. 368, 370. These are clear and convincing reasons to discredit Plaintiff.

**2. Conservative treatment**

The ALJ noted that Plaintiff's treatment was mostly routine and/or conservative in nature. Tr. 21.

Conservative treatment can be "sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

The Court finds the ALJ partially erred in concluding that Plaintiff's treatment was mostly routine and/or conservative. As discussed *infra*, Plaintiff received limited treatment for her depression and anxiety, and this treatment was limited to medication management and two counseling sessions. Much of the record regarding Plaintiff's physical impairments, however, involves treatment Plaintiff received after her total right knee replacement, a surgery which cannot be classified as conservative or routine treatment. Thus, the ALJ did not err in

discrediting Plaintiff based on conservative treatment for her mental impairments, but this reasoning is inapplicable to her physical impairments.

### 3.  Normal presentations

The ALJ found Plaintiff's reporting of depression and suicidal thoughts inconsistent with treatment notes indicating that Plaintiff presented normally to her health care providers.  Tr. 21 (citing Tr. 298).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid."  *Smolen*, 80 F.3d at 1284.

The ALJ did not err in using Plaintiff's normal presentations at her medical appointments to discredit Plaintiff.  As noted by the ALJ, some of Plaintiff's treatment notes, especially Plaintiff's most recent treatment notes, indicate that Plaintiff presented to her medical appointments without signs of depression.  *See* Tr. 298, 366, 368, 369, 370.  These observations are inconsistent with Plaintiff's allegations of disabling depressive symptoms and suggest that Plaintiff's depression is substantially controlled.  Plaintiff is accurate in arguing that, for a period of time, between approximately May 2011 and November 2011, treatment notes reflect that Plaintiff did present with a depressed mood and blunted affect. ECF No. 12 at 15 (citing Tr. 288, 291, 293, 298, 300, 330, 332, 356).   These observations corroborate Plaintiff's allegations. But given the inconsistent evidence, the Court must defer to the ALJ's interpretation, which is substantially supported.  *Tackett*, 180 F.3d at 1097.

### 4.  Lack of regular mental health treatment

The ALJ noted that Plaintiff only sought mental health treatment on "a very infrequent basis" and reasoned, "If [Plaintiff's] health problems were not severe enough to motivate her to follow through with treatment, it is difficult to accept that they are disabling."  Tr. 21.

Unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints.  20 C.F.R. § 404.1530; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ did not err in reasoning that Plaintiff's lack of regular mental health treatment suggested that Plaintiff's impairments were not as severe as she alleged. Treatment notes indicate Plaintiff has a history of depression.  *See*, *e.g.*, Tr. 303 (treatment note dated March 11, 2011, noting Plaintiff's depression "stable").  In the time period relevant to this case, the record reflects that Plaintiff sought treatment for depression from her primary care provider on six occasions: May 19, 2011, July 18, 2011, October 6, 2011, October 21, 2011, October 26, 2011, and November 9, 2011.  Tr. 288, 290, 292, 295 297, 299.  Plaintiff attended counseling sessions on October 27, 2011, and November 4, 2011, Tr. 327-332, but apparently discontinued counseling because she was not sure "what [she was] supposed to get out of [it]," Tr. 331.  After November 2011, Plaintiff apparently did not seek mental health treatment for over a year.  Plaintiff again alleged depressive symptoms at approximately five appointments between April 16, 2013, and July 22, 2013.  Tr. 365-71.  These appointments were primarily related to treatment involving a lipoma on Plaintiff's back, but Plaintiff's treating source also made adjustments to Plaintiff's medication for her depression and anxiety.  Given the significant gap in treatment between November 2011 and April 2013, and the fact that Plaintiff declined to pursue counseling, the ALJ did not err in discrediting Plaintiff based on her lack of mental health treatment.

Plaintiff argues that her failure to seek treatment can be excused given the fact that her suicidal thoughts increased when she started taking anti-depressants, causing her "to develop an aversion to treatment through prescription drugs and counseling." ECF No. 12 at 16.  While this may have been Plaintiff's subjective rationale for not seeking treatment, it is not supported by the administrative record. Rather, the record indicates, although Plaintiff's treatment providers stopped

1    prescribing her Wellbutrin, Plaintiff continued to take other medications until her

2    treating sources eventually found the right combination and dosage of medications

3    to effectively control Plaintiff's depression and anxiety. *See* Tr. 368-71.

4    Plaintiff's rationale further does not seem to excuse her failure to seek counseling.

5    Counseling does not appear to have played a role in Plaintiff's overdose and

6    Plaintiff apparently found counseling unnecessary. *See* Tr. 331 (at Plaintiff's

7    second, and final, counseling session she stated that she was not sure "what [she

8    was] supposed to get out of [counseling]").

9         **5. Activities of daily living**

10        The ALJ found Plaintiff's activities inconsistent with her reports of disabling

11   limitations and symptoms. Tr. 21. The ALJ noted Plaintiff was able to go on daily

12   twenty minute walks and care for her grandchildren and her son's girlfriend's son.

13   Tr. 21 (citing Tr. 320, 331). The ALJ also noted that Plaintiff worked for six

14   months as a home health aide, and such employment ended because Plaintiff did

15   not take a test within the required timeframe. Tr. 22.

16        A claimant's daily activities may support an adverse credibility finding if (1)

17   the claimant's activities contradict his or her other testimony, or (2) "the claimant

18   is able to spend a substantial part of his day engaged in pursuits involving

19   performance of physical functions that are transferable to a work setting." *Orn v.*

20   *Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603). "The ALJ

21   must make 'specific findings relating to [the daily] activities' and their

22   transferability to conclude that a claimant's daily activities warrant an adverse

23   credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th

24   Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for

25   benefits. *Fair*, 885 F.2d at 603.

26        The ALJ partially erred in finding Plaintiff's activities inconsistent with her

27   symptom reporting. The ALJ erred in finding Plaintiff's daily walks were

28   inconsistent with her symptom reporting. At the hearing, Plaintiff testified that she

can walk for about half an hour or forty five minutes.  Tr. 59-60.  Plaintiff consistently reported her ability to walk and the ALJ made no finding that being able to walk for twenty to forty five minutes was a task transferable to a work setting.  Furthermore, the ALJ made no specific findings about how Plaintiff's care of her grandchildren was inconsistent with her testimony or involved tasks transferrable to a work setting.  Simply because the children were difficult and the babysitting schedule was somewhat unpredictable does not necessarily mean that Plaintiff engaged in activity inconsistent with her testimony or which involved tasks transferable to a work setting.  *See Fair*, 885 F.2d at 603 (claimant need not be "utterly incapacitated" to be eligible for benefits).

The ALJ's finding that Plaintiff was able to work during her alleged disability is a specific, clear, and convincing reason for discrediting Plaintiff.  Plaintiff testified that she worked as an in-home caretaker part-time for six months, but had to stop working because she did not take a required test.  Tr. 45-46.  Even though this was not full time work, the ALJ was still allowed to consider it in evaluating Plaintiff's credibility and did not err in finding that such work was inconsistent with Plaintiff's reporting of disabling symptoms.  *See Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (claimant's ability to work can be considered in assessing credibility).  The ALJ's finding is bolstered by the fact that Plaintiff stopped this work for reasons other than her alleged disability.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly relied on the fact that claimant left his job because he was laid off, rather than because he was injured, in finding the claimant not entirely credible).  The fact that Plaintiff worked part time for six months during her alleged disability is a specific, clear, and convincing reason to discredit Plaintiff.

**6. Conclusion**

Some of the reasons provided by the ALJ were not specific, clear, and convincing reasons to discredit Plaintiff.  Specifically, the ALJ erred in finding

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

1    Plaintiff underwent only conservative treatment and by failing to provide specific

2    reasons for how Plaintiff's ability to go on walks and care for her grandchildren

3    was inconsistent with her symptom reporting or involved tasks transferrable to a

4    work setting.  These errors are harmless, however, given the number of other

5    specific, clear, and convincing reasons provided by the ALJ to discredit Plaintiff.

6    *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is

7    harmless when "it is clear from the record that the . . . error was inconsequential to

8    the ultimate nondisability determination"); *Carmickle v. Comm'r, Soc. Sec.*

9    *Admin.*, 533 F.3d 1160, 1163 (9th Cir. 2008) (upholding adverse credibility finding

10   where ALJ provided four reasons to discredit claimant, two of which were invalid).

11   **B.      Evaluation of Medical Evidence**

12          Plaintiff argues the ALJ failed to give adequate weight to the limitations

13   assessed by John Wheaton, M.D., one of Plaintiff's treating physicians, and

14   Thomas Genthe, Ph.D., an examining psychologist.  ECF No. 12 at 10-12.

15          "In making a determination of disability, the ALJ must develop the record

16   and interpret the medical evidence."  *Howard ex. rel. Wolff v. Barnhart*, 341 F.3d

17   1006, 1012 (9th Cir. 2003).

18          In weighing medical source opinions, the ALJ should distinguish between

19   three different types of physicians: (1) treating physicians, who actually treat the

20   claimant; (2) examining physicians, who examine but do not treat the claimant;

21   and, (3) nonexamining physicians who neither treat nor examine the claimant.

22   *Lester*, 81 F.3d at 830.  The ALJ should give more weight to the opinion of a

23   treating physician than to the opinion of an examining physician.  *Orn*, 495 F.3d at

24   631.  The ALJ should give more weight to the opinion of an examining physician

25   than to the opinion of a nonexamining physician.  *Id.*

26          When a physician's opinion is not contradicted by another physician, the

27   ALJ may reject the opinion only for "clear and convincing" reasons.  *Baxter v.*

28   *Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  When a physician's opinion is

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

### 1. John Wheaton, M.D.

Dr. Wheaton is an orthopedic specialist who performed Plaintiff's right total knee arthroplasty and treated Plaintiff on a number of occasions post-surgery. *See* Tr. 320-26, 333. In May 2011, Dr. Wheaton opined that Plaintiff could return to work with the following limitations: "No ladders or kneeling," "No squatting more than 1 hour per shift," and "No pushing, pulling, or lifting greater than 30 pounds." Tr. 326. Dr. Wheaton stated that these limitations would "all be enforced until September 1, 2011." Tr. 326. In April 2012, Dr. Wheaton opined that Plaintiff was "unable to kneel." Tr. 333.

Plaintiff argues that the ALJ ignored the limitations assessed by Dr. Wheaton, including her need to avoid ladders and kneeling. ECF No. 12 at 11. Defendant notes that the ALJ discussed Dr. Wheaton's assessments, but Defendant concedes that the ALJ failed to weigh them. ECF No. 20 at 13 (citing Tr. 19). Defendant argues that any error made by the ALJ was harmless, however, as Dr. Wheaton opined that the limitations would only last for about four months, the ALJ accounted for most of the limitations assessed by Dr. Wheaton, and because the jobs identified by the ALJ at step five do not involve kneeling. *Id.* at 14.

The Court finds any error made by the ALJ to be harmless for the reasons argued by Defendant. While the opinions of a treating physician are generally entitled to deference, even if the ALJ had given controlling weight to the limitations assessed by Dr. Wheaton, the ALJ's ultimate nondisability determination would not be affected. Therefore, the error was harmless.

First, Dr. Wheaton estimated the limitations he assessed in May 2011 would need to be enforced only until September 2011. Plaintiff's surgery was in April 2011 and it is reasonable to presume that these limitations began immediately after

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

1    her surgery.  If, as estimated by Dr. Wheaton, these limitations lasted into

2    September 2011, the record supports that Plaintiff's limitations assessed by Dr.

3    Wheaton at Tr. 326 lasted for five to six months.  This is not long enough to

4    establish disability.  *See* 42 U.S.C. § 1382c(a)(3)(A) (disability must be premised

5    on medically determinable physical or mental impairments that have "lasted or can

6    be expected to last for a continuous period of not less than twelve months").

7         Second, the ALJ's RFC determination generally accounted for Plaintiff's

8    lifting, pushing, pulling limitations, and Dr. Wheaton's opinion that Plaintiff

9    should never climb ladders.  *Compare* Tr. 17 *with* Tr. 326.

10        Finally, even if the ALJ had credited Dr. Wheaton's April 2012 opinion that

11   Plaintiff "is unable to kneel," Tr. 333, this limitation would not preclude Plaintiff

12   from performing the jobs identified by the VE, Tr. 64-65, because none of these

13   jobs involve kneeling.  *See* Dictionary of Occupational Titles 706.687-010, 1991

14   WL 679074 (production assembler), 211.462-010, 1991 WL 671840 (cashier II),

15   311.472-010, 1991 WL 672682 (fast food worker).

16        In conclusion, the error made by the ALJ in failing to give weight to Dr.

17   Wheaton's opinions is harmless.

18        **2.  Thomas Genthe, Ph.D.**

19        Dr. Genthe completed a psychological evaluation of Plaintiff in August

20   2012.  Tr. 353-57.  Dr. Genthe diagnosed Plaintiff with major depressive disorder

21   and panic disorder with agoraphobia.  Tr. 356.  Dr. Genthe concluded

22        [Plaintiff's] ability to understand and remember short, simple
          instructions was assessed as good.  Her ability to understand and
23        remember detailed instructions was assessed as fair.  Her ability to
          carry out short, simple instructions was assessed as good.  Her ability
24        to carry out detailed instructions was assessed as fair.  Her ability to
25        sustain an ordinary routine without supervision was assessed as good
          to fair.  Her ability to work with or near others without being
26        distracted by them was assessed as fair.  Her ability to respond
27        appropriately to changes in the work setting was assessed as fair.

28

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

> From a social perspective, [Plaintiff's] ability to interact appropriately with the public was assessed as fair. Her ability to get along with coworkers and/or peers was assessed as fair, and her ability to respond appropriately to criticism from supervisors as fair.
>
> [Plaintiff's] prognosis is viewed as fair. At this time, she is unlikely to function adequately in a work setting until her psychological symptoms have been managed more effectively. Given her response to treatment, and willing participation, a period of 3-6 months may likely be sufficient to address her treatment needs at least moderately well, and help her regain the necessary emotional functioning to resume fulltime work related activities.

Tr. 357.

The ALJ gave some weight to Dr. Genthe's opinions. Tr. 22. The ALJ rejected Dr. Genthe's conclusion that Plaintiff is unlikely able to function adequately until she receives treatment. Tr. 22. The ALJ found this conclusion inconsistent with Dr. Genthe's normal mental status examination and the fact that Plaintiff reported that her physical condition was the primary reason why she was unable to work. Tr. 22. The ALJ further found that other records indicated that Plaintiff's depression and anxiety were improved and controlled. Tr. 22.

Plaintiff argues that the ALJ ignored Dr. Genthe's conclusion that Plaintiff was unable to work without treatment and erred in reasoning that Dr. Genthe relied on Plaintiff's self-reported symptoms. ECF No. 12 at 11-12. Defendant concedes that the ALJ erred in reasoning that Plaintiff reported primarily physical impairments and not mental impairments, ECF No. 20 at 15 (citing Tr. 353), but argues that the error was harmless in light of the ALJ's other reasons, *id.*

The Court finds that the ALJ did not err in evaluating Dr. Genthe's opinions and provided specific and legitimate reasons for rejecting Dr. Genthe's conclusion that Plaintiff was unable to work without further treatment. Plaintiff appears to be mistaken when she argues that the ALJ rejected Dr. Genthe's opinion on account of Plaintiff's unreliable reporting; the ALJ did not cite this as a reason to reject Dr.

ORDER GRANTING DEFENDANT'S MOTION . . . - 15

Genthe's opinion.  The ALJ did not err in noting inconsistencies between the results of Dr. Genthe's "fairly normal" mental status exam and his ultimate conclusion.  Tr. 22, 355-57; *see Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding that an ALJ may cite internal inconsistencies in evaluating a physician's report).  The ALJ also did not err in reasoning that, contrary to Dr. Genthe's opinion, Plaintiff reported that her depression and anxiety were improved and controlled.  Tr. 22; *see also* Tr. 366-71.  The fact that a condition can be remedied by medication is a legitimate reason for discrediting an opinion.  *Warre*, 439 F.3d at 1006.  The ALJ provided specific and legitimate reasons for rejecting Dr. Genthe's opinion that Plaintiff would be likely be unable to work without treatment.

**C.     RFC and Hypothetical Question**

Plaintiff argues that the ALJ did not account for all of Plaintiff's limitations in the ALJ's RFC determination and inquiries to the VE.  ECF No. 12 at 17-18.  Plaintiff argues that ALJ should have included limitations regarding kneeling, standing, and psychological symptoms.  *Id.*  Plaintiff also argues that ALJ should have found her limited to sedentary work.  *Id.* at 18.

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs.").  In formulating a RFC, the ALJ weighs medical and other source opinions and also considers the claimant's credibility and ability to perform daily activities.  *See*, *e.g.*, *Bray*, 554 F.3d at 1226.

In this case, the ALJ found Plaintiff had the RFC to perform a range of light work except:

[L]ift no more than 20 pounds at a time; frequently lift and carry 10

pounds; sit, stand and walk 6 hours out of an 8-hour workday; unlimited push/pull within lifting restrictions; never climb ladders, ropes, and scaffolds and crouch; occasionally climb ramps or stairs, kneel, and crawl; frequently balance, and stoop; avoid concentrated exposure to extreme cold and excessive vibration; avoid moderate exposure to unprotected heights and use of moving machinery; capable of simple, routine and repetitive tasks, some well learned detailed tasks; can maintain attention and concentration for 2 hour segments for simple and well learned tasks without more than normally expected brief interruptions; is capable of superficial contact with the general public; can interact with coworkers on specific work related tasks.

Tr. 17.  When the ALJ asked the VE if someone with Plaintiff's background and these limitations was capable of working, the VE testified that such a person could work as a production assembler, cashier II, or a fast food worker.  Tr. 64-65.

The Court concludes that the ALJ's RFC determination is supported by substantial evidence and not based on legal error. The nonexertional social and cognitive limitations contained in Plaintiff's RFC are essentially the same as those assessed by Dr. Genthe.  *Cf.* Tr. 357.  And as discussed *supra*, any error the ALJ made in not giving weight to Dr. Wheaton's opinions concerning Plaintiff's ability to kneel, and other (temporary) limitations, Tr. 327, 333, is harmless.  Finally, although Plaintiff testified that she can only stand for about fifteen minutes at a time or for half an hour in an eight-hour workday, Tr. 58, such a severe limitation is not supported by the record and the ALJ did not err in finding Plaintiff's symptom reporting less than credible.  Likewise, Plaintiff fails to point to any evidence—other than her own testimony—supporting her argument that she is limited to sedentary work.  As the ALJ's hypothetical question to the VE mirrored the ALJ's RFC determination, the Court further finds that the ALJ's inquiries to the VE were also proper.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (ALJ is only required to present the VE with those limitations the ALJ finds to be credible and supported by the evidence).

ORDER GRANTING DEFENDANT'S MOTION . . . - 17

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED September 28, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 18